DAVIS, Judge.
The Department of Children and Family Services (DCF) challenges the final order directing it to grant the Florida Statewide Advocacy Council (FSAC) and the Florida Local Advocacy Council, Multi-Program for Service Area 15 (FLAC) access to certain records as to which DCF was the custodian. We affirm.
FSAC and FLAC are legislatively-created councils, comprised of citizen volunteers, that were established to investigate and monitor state agencies providing services to citizens. In furtherance of their prescribed duties, on August 8, 2003, FSAC and FLAC filed a joint petition in the circuit court seeking an “access warrant” to obtain records of certain named DCF clients pursuant to sections 402.165 and 402.166, Florida Statutes (2003). The affidavit in support of the petition alleged that FSAC and FLAC sought the records pursuant to their investigation of complaints they had received regarding DCF’s handling of cases involving the specifically named clients. According to the affidavit, DCF refused their request, and FSAC and FLAC filed the instant suit.
Following an ex parte hearing, the trial court granted the councils’ petition and entered an access warrant requiring DCF to disclose to FSAC and FLAC all files and records related to the named clients, including those documents that DCF had previously denied to the councils because they were considered “confidential.” DCF moved for a protective order, arguing that certain federal regulations required DCF to keep some types of records confidential and that those records should be excluded *1164 from the scope of the warrant.[1] The trial court denied DCF’s motion, finding that the confidentiality requirements of the federal law did not prohibit the disclosure. The trial court further suggested that DCF would not be held liable for the disclosure of confidential records to FSAC or FLAC if the disclosure were made pursuant to a trial court order because such an order would operate like a permission slip to excuse DCF from such liability.[2] Finally, the trial court suggested that the legislature had granted FSAC and FLAC standing to petition for access to such confidential records as part of the investigative procedure just in case the custodial agency “balked” and that issuance of an access warrant was appropriate to ensure the full and open cooperation of the agency being investigated.
In challenging the court’s entry of the access warrant, DCF raises several points on appeal. First, it suggests that the warrant was deficient because service of the warrant on the local district administrator for DCF District VIII, instead of on the Secretary of DCF, did not bind all employees of DCF. However, because there is no issue in controversy as to which DCF employees were bound by the warrant or whether the warrant could be enforced against an employee who was not under the supervision of the local district administrator, the matter is not ripe for review. The same may be said of DCF’s argument that certain language in the warrant suggested that section 402.167 precluded judicial review of the warrant. That issue was never raised or decided below. In fact, the same trial court that entered the warrant containing that language gave DCF an opportunity to file and argue a motion for a protective order and then stayed enforcement of the warrant to allow DCF to seek appellate review.
DCF also argues unsuccessfully that the warrant was deficient because the trial court called it a “warrant” rather than an “order.” While it is true that neither section 402.165(8)(a)(3) nor section 402.166(8)(a)(3) refer to an “access warrant,” neither do those sections offer any suggestion as to the proper name to be given to the relief granted. The use of the term access warrant instead of order is a semantic difference that creates no prejudice and, in fact, may be more appropriate in this type of action, which is more in the nature of an investigatory proceeding than an adversarial action.
Finally, DCF’s argument that certain federal regulations prohibit disclosure of the records to FSAC and FLAC is without merit. The only federal regulation argued by DCF below was HIPAA, which expressly provides for such disclosures if they are made pursuant to a court order, as here. See 45 C.F.R. § 164.512(e)(l)(i).
However, DCF’s argument that the legislature intended that actions brought pursuant to sections 402.165 and 402.166 be adversarial, rather than ex parte as determined by the trial court here, and that as such DCF should be formally served and given an opportunity to litigate the confidentiality issues prior to issuance of the warrant, is worthy of discussion. Since this appears to be a case of first impression, we must examine the statutory scheme to determine the legislative intent. In reviewing the trial court’s finding that this was intended to be an ex parte, not an adversarial, proceeding, we apply a de *1165 novo standard of review. See Gilliam v. Smart, 809 So.2d 905, 907 (Fla. 1st DCA 2002).
FSAC was created by the legislature “to have volunteers operate a network of councils that shall, without interference by an executive agency, undertake to discover, monitor, investigate, and determine the presence of conditions or individuals that constitute a threat to the rights, health, safety, or welfare of persons who receive services from state agencies.” § 402.164(a). These responsibilities are to be performed locally by FLAC under the direction of FSAC. The enacting legislation for each council specifically states that the councils were established to serve as “independent third-party meehanism[s] for protecting the constitutional and human rights” of any client of a state agency. §§ 402.165(7)(a), .166(7)(a). Further, the statutes empower the councils to carry out their assigned tasks by making site visits, which may include inspections of agency records. If the visit is in response to a complaint that has been filed with the council, the visit may even be unannounced. §§ 402.165(7)(b), ,166(7)(b). Most importantly, both FSAC and FLAC are statutorily authorized to have “[a]ccess to all client records, files, and reports from any program, service, or facility that is operated, funded, or contracted by any state agency that provides client services and any records that are material to its investigation and are in the custody of any other agency or department of government.” §§ 402.165(8)(a)(2), ,166(8)(a)(l).
However, because access is to be denied if a “specific procedure or prohibition for reviewing records [is] required by a federal law and regulation that supercedes state law,” §§ 402.165(8)(a)(2), .166(8)(a)(l), the legislature statutorily authorizes FSAC and FLAC to seek a court order for access to such records, see §§ 402.165(8)(a)(3), .166(8)(a)(2). In order to have standing under these sections, the council is required to specify in its petition the reason the records are needed and the intended use of the information.[3] §§ 402.165(8)(a)(3), .166(8)(a)(2). The statute also specifies that any information obtained by a council pursuant to such an investigation would be confidential and exempt from disclosure pursuant to a public records request. §§ 402.165(8)(b), .166(8)(b). Willfully disclosing such confidential information is a second-degree misdemeanor. §§ 402.165(8)(e), .166(8)(e).
DCF maintains that even though the legislature has given FSAC and FLAC standing to seek access to records that are designated confidential by federal regulations, the procedure that they must follow is dictated by Florida Department of Children & Families v. Sun-Sentinel, Inc., 865 So.2d 1278 (Fla.2004), which requires formal service on the person named in the report or the agency affected.
However, Sun-Sentinel is distinguishable. That case involved an attempt to obtain information pursuant to Florida’s public records law, section 119.07, Florida Statutes (2003). In Sunr-Sentinel, a newspaper was attempting to obtain information from DCF regarding an abuse investigation that would then be made public via the media. The Florida Supreme Court held that the petitioner in such cases is required to formally serve DCF in order to allow DCF to represent the interests of its client. However, the proceedings before us have not been brought pursuant to the public records law and are not an attempt to make public information that would otherwise be deemed confidential. Rather, the statutory scheme under the FSAC/FLAC legislation is designed to al *1166 low an investigative arm of the state to have access to records held by another agency that is being investigated when those records have been designated as confidential by federal or state law. Moreover, disclosure to the investigating body is specifically limited by statute as to where the records may be reviewed, how the information may be used, and to whom the information may be further disclosed. The person named in such a report does not have the same need of representation in these proceedings as does a person in proceedings filed pursuant to the public records law because the information obtained pursuant to a FSAC/FLAC investigation is never made public. In fact, it may be that an unencumbered investigation under FSAC/FLAC would benefit the person named in the report, not prejudice him or her, as in the case of a public records release. For these reasons, Sun-Sentinel does not apply here, and we must look to the statute for further guidance.
The statute repeatedly emphasizes that the goal of the legislature in creating FSAC and FLAC was to ensure open and unhindered investigations. Indeed, the legislature specified that it intended such investigations be conducted “without interference by an executive agency.” § 402.164(l)(a). Furthermore, although the statutory scheme required DCF to provide administrative support to FSAC, the statute also specifically stated that FSAC was “not subject to control, supervision, or direction by the Department of Children and Family Services in the performance of its duties.” § 402.165(1).[4] Similarly, although DCF was required to provide the local councils with administrative staff support, these individual staff members were statutorily required to “perform the functions required by the local councils without interference from the department.” § 402.166(1).
In addition, in performing their duties, both, FSAC and FLAC were authorized to make unannounced site visits to inspect records when investigating specific complaints. §§ 402.165(7)(b), .166(7)(b). The statute authorized the councils to have access to “all client records, files, and reports.” §§ 402.165(8)(a)(l), .166(8)(a)(l). Finally, the legislature required that all directors of state agencies “ensure the full cooperation and assistance of employees of their respective state agencies” with the members of the councils. § 402.167(3). Clearly, the legislature intended that FSAC and FLAC investigations would be able to rely on the existence of open records and on the cooperation and compliance of the employees of the agency being investigated. The fact that the councils were given the right to make unannounced visits that included the inspection of records suggests that the legislature was not contemplating an adversarial proceeding to obtain access to confidential records.
We therefore agree with the trial court’s reading of the statute. While DCF does possess certain records that are designated confidential by HIPAA, HIPAA expressly allows the disclosure of such records if the disclosure is made pursuant to a court order. See 45 C.F.R. § 164.512(e)(1)®. The disclosure that is allowed pursuant to the statutory scheme is limited in its use and is made to another state “agency,” i.e., not the public. Moreover, the statute requires the court to issue an order directing disclosure in order to meet the specifications of review im *1167 posed by the federal regulation and to serve as the “permission slip” that absolves DCF of liability for disclosing the information to a third party.
Furthermore, DCF does not have an interest in the information contained in these “confidential” records. It is merely the custodian and has no standing to challenge the limited disclosure required by these provisions. Any liability to which DCF might potentially be subjected is removed by entry of the court’s order. To suggest that DCF must be noticed so as to be able to defend an interest it does not have is illogical.
In conclusion, we acknowledge that the statute is silent as to whether the custodian of the records should be served and afforded an adversarial hearing. However, because (1) this is a part of a statutorily-created investigative process that specifically allows unannounced visits and record inspections, (2) the statute mandates that the agency being investigated must fully cooperate and that DCF is not permitted to interfere in the investigations, and (3) the statute limits the nature of the disclosure of the confidential records, we conclude that an adversarial hearing was not contemplated by the legislature and that formal service on the custodian of the records should not be read into the statutory scheme.
We note parenthetically that under the facts of this case, an adversarial hearing would also seem pointless. Given the fact that DCF had already denied access to the records on confidentiality grounds, an adversarial hearing would not resolve any issues but would add an additional layer of bureaucracy. Based on our reading of the statute, it is clear that the legislature intended that all records be made available for inspection by FLAC and FSAC. Realizing that DCF was burdened with protecting certain records designated confidential, the legislature authorized the councils to seek an access warrant or “permission slip” from the court prior to making the site visit. Thus, FLAC and FSAC could go in unannounced and review all the records, including confidential ones, and accomplish the investigative function contemplated by the legislature. To require notice and an adversarial hearing would negate the “unannounced” element of the investigation and limit the effectiveness of the investigative process.
Concluding that the provisions of sections 402.165 and 402.166 do not contemplate formal service and an adversarial hearing, we affirm the trial court’s issuance of the access warrant.
Affirmed.
SILBERMAN and KELLY, JJ., Concur.

. The only federal regulation cited by DCF was the Health Insurance Portability and Accountability Act of 1996, which is referred to as HIPAA.

. The trial court stated: ''[0]nce a court enters an order saying that somebody can have access to it, the party holding the documents is off the hook.”

. In this case, DCF does not challenge the sufficiency of the petition.

. We note that pursuant to the 2004 amendment to this subsection, FSAC is now to be located in the Executive Office of the Governor and may be "assigned by the Governor for administrative support purposes to any Governor's agency.” Ch. 04-376, § 2, Laws of Fla.