912 So.2d 590 (2005)
Fenton H. GERMANN, as Personal Representative of the Estate of Irene A. Germann, Appellant,
v.
AGE INSTITUTE OF FLORIDA, INC., Age Institute Holdings, Inc., Senior Health Management LLC, Extendicare Health Services, Inc., Extendicare, Inc., Partners Health Group-Florida, LLC, Partners Health Group, LLC, Bart Wyatt, Daniel Davis, Richard G. Moss, and Frances Rich, Appellees.
No. 2D04-2623.
District Court of Appeal of Florida, Second District.
February 9, 2005.
Rehearing Denied March 11, 2005.
Susan B. Morrison and Kimberley M. Kohn of Wilkes & McHugh, P.A., Tampa, for Appellant.
Connolly C. McArthur and Donna J. Fudge of Buckley & Fudge, P.A., St. Petersburg, *591 for Appellees Extendicare Health Services, Inc., Extendicare, Inc., Partners Health Group-Florida LLC, and Partners Health Group LLC.
No appearance for Appellees Age Institute of Florida, Inc., Age Institute Holdings, Inc., Senior Health Management LLC, Bart Wyatt, Daniel Davis, Richard G. Moss, and Frances Rich.
CASANUEVA, Judge.
Fenton H. Germann, as personal representative of his mother's estate, sued the owner of the nursing home in which his mother resided at the time of her death and ten related parties, alleging that their operation of the nursing home caused her death. The seven-count complaint alleged negligence, wrongful death, breach of fiduciary duty, and deprivations of the statutory rights of a nursing home resident provided by sections 400.022 and 400.023, Florida Statutes (2000-01). Two of the defendants moved to compel arbitration, and the trial court granted their motion. Mr. Germann then filed this nonfinal appeal, claiming error because his mother was neither a signatory to nor a third-party beneficiary of any contract that would subject her to arbitration. We reverse.[1]
One group of defendants, Age Institute of Florida, Inc.; Age Institute Holdings, Inc.; and Senior Health Management LLC [the "Age defendants"], are related companies that own or operate the nursing home where Mrs. Germann resided for the nine months preceding her death. A second group of defendants, Extendicare Health Services, Inc.; Extendicare, Inc.; Partners Health Group-Florida, LLC; and Partners Health Group, LLC [the "Extendicare defendants" or "Extendicare"], are related companies that provided management and accounting consultant services to the Age defendants. Extendicare maintains that the first two Extendicare defendants are "indirect, upstream business relatives" of the latter two Extendicare defendants. The four remaining individual defendants worked at the nursing home in various capacities.
At issue are two contracts containing arbitration clauses. The first contract, titled "Consulting Agreement," is signed by Age Institute of Florida, the owner of the nursing home, Age Institute Holdings, the manager of the home, and Partners Health Group, the consultant. The contract secures the consultant's services to assist the manager in operating the facility. The second contract, titled "Financial Processing Services Agreement," is signed by Senior Health Management, as manager of the nursing home, and Partners Health Group-Florida. Paragraph 15.9 of this contract states that the "parties agree that Client [the owner of the nursing home] is an intended third party beneficiary of this Agreement, and shall be entitled to enforce" the obligations of the signatories. All parties agree that Mrs. Germann was not a signatory to either of these contracts or to any contract containing an arbitration clause.
Three factors must be considered before a trial court may grant a motion to compel arbitration: whether a valid agreement to arbitrate exists, whether an arbitrable issue exists, and whether the right to arbitration was waived. Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). *592 This matter turns on the first factor  whether a valid agreement to arbitrate exists  which is not satisfied because Mrs. Germann did not sign either contract. However, a nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract, or if the nonsignatory is specifically the intended third-party beneficiary of the contract. Morgan Stanley DW Inc. v. Halliday, 873 So.2d 400 (Fla. 4th DCA 2004); see also Metro. Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985); Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So.2d 1028 (Fla. 4th DCA 1994).
The Extendicare defendants argue that Mrs. Germann was a member of a class of persons who benefitted from the contracts because the services of the Extendicare defendants would ostensibly improve the management of the home. However, the Morgan Stanley case does not support this position. The Fourth District in Morgan Stanley found that a trust beneficiary who was a nonsignatory to an arbitration clause in a customer account agreement between the trustees and Morgan Stanley was not bound to arbitrate as a third-party beneficiary. The court recognized that the trust assets were for the benefit of the beneficiary but rejected the conclusion that the customer account agreement was done primarily for her benefit. "More important, it does not indicate that the arbitration clause was done for her primary and direct benefit  as one would suppose would be the rule in order to make a nonsignatory to an arbitration agreement bound by somebody else's manifestation of assent." 873 So.2d at 403. If a trust beneficiary cannot be considered a specific or intended third-party beneficiary of an agreement dealing with assets that produce income that goes to her, neither can Mrs. Germann, a nursing home resident, be considered a third-party beneficiary of an agreement for consulting and financial processing services for the home.
Further, Mrs. Germann could be a specific or intended third-party beneficiary only if the contracts clearly expressed an intent to primarily or directly benefit her or the class of persons to which she belonged. See Aetna Cas. & Sur. Co. v. Jelac Corp., 505 So.2d 37 (Fla. 4th DCA 1987); Sec. Mut. Cas. Co. v. Pacura, 402 So.2d 1266 (Fla. 3d DCA 1981). Neither the Consulting Agreement nor the Financial Processing Services Agreement clearly expresses such intent; in fact, the latter contract expressly names a different party as the intended third-party beneficiary. Cf. Int'l Bullion & Metal Brokers, Inc. v. W. Pointe Land, LLC, 846 So.2d 1276 (Fla. 4th DCA 2003) (assuming that appellee qualified as a third-party beneficiary but holding that it was nonetheless precluded from the arbitration provision by the contract's express language). Furthermore, even if Mrs. Germann were to be considered an incidental third-party beneficiary of the contracts, her classification as such would not have supported the arbitration order. Cf. McKinney-Green, Inc. v. Davis, 606 So.2d 393, 396 (Fla. 1st DCA 1992) ("A merely incidental or consequential third-party beneficiary of a contract may not sue for its enforcement.").
Thus, as no valid agreement to arbitrate existed, and as Mrs. Germann neither received something more than an incidental or consequential benefit from the contracts nor was the intended third-party beneficiary, her estate is not bound to the arbitration provisions in these contracts.
Finally, Extendicare argues that the trial court properly granted the motion to compel arbitration because Mr. Germann waived any objection to arbitration by previously arguing a theory inconsistent with *593 his present position. We are not persuaded. Specifically, Mr. Germann argued against the Extendicare defendants' motion for summary judgment by relying on these very contracts to show that the Extendicare defendants had a duty and breached it. We interpret Mr. Germann's argument to be that the Extendicare defendants were contractually involved with the management of the home, exceeded the scope of the agreements, became involved in patient care, and contributed to Mrs. Germann's demise.[2]
Because Mrs. Germann was neither a signatory to nor an intended third-party beneficiary of the two contracts containing an arbitration clause, and because she received at best only an incidental benefit from them, the trial court erred in ordering the estate's claims to arbitration.
Reversed and remanded for further proceedings.
KELLY and VILLANTI, JJ., Concur.
NOTES
[1] Mr. Germann also argues that the defendants who moved for arbitration waived that right because they took actions inconsistent with their asserted right to arbitration. The issue was not preserved for review because it was not presented to the trial court for consideration. See Dep't of Children & Family Servs. v. Fla. Statewide Advocacy Council, 884 So.2d 1162 (Fla. 2d DCA 2004).
[2] Our reference to the summary judgment proceedings should in no way be interpreted as a comment on the propriety of granting summary judgment as that issue is not currently before us.