[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12305

_____

D. C. Docket No. 8:07-cv-02142-EAK-TGW

JOANNE KONG,

Plaintiff-Appellant,

versus

ALLIED PROFESSIONAL INSURANCE COMPANY,

Defendant-Appellee,

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 9, 2014)

Before TJOFLAT, COX, and ALARCÓN,* Circuit Judges.

ALARCÓN, Circuit Judge:

_____

*Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

For the past eight years, Joanne Kong has sought to enforce against Allied Professional Insurance Company ("Allied") a tort judgment she received against Patricia Costello, a person Allied insured. The dispute has sent the parties from Florida to California and back again. They have litigated before an arbitrator, a state court, two federal district courts, and both the Ninth and Eleventh Circuits. This appeal marks the latest chapter in this protracted tale.

There are two issues before this Court. The first is whether there is a basis for federal jurisdiction. This action was initially filed in the Circuit Court for the Sixth Judicial Circuit of Florida and removed by Allied based on diversity jurisdiction. Kong filed a motion to remand the case to state court. The district court denied the motion. Kong contends the district court erred in this regard because her claim against Allied is a direct action, which defeats diversity under 28 U.S.C. § 1332(c). The second issue is whether the court below erred in compelling the parties to arbitrate their dispute in California.

We conclude the court below properly denied Kong's motion to remand because her claim against Allied is not a direct action within the meaning of § 1332(c). Further, we find no error in the district court's order compelling arbitration. We therefore affirm.

2

## I

This case began in August 2005, when Joanne Kong, the appellant, visited the Apollo Center for Massage Therapy. During the course of her massage, Kong's masseuse, Patricia Costello, allegedly broke Kong's ankle while trying to stretch and rotate the joint. Kong then filed suit against Costello in a Florida state court. Costello tendered the claim to Allied, the appellee. Allied denied the claim for reasons not relevant to this appeal.

After learning that Allied had denied coverage, Costello and Kong agreed to the entry of a stipulated judgment in favor of Kong. Kong agreed that she would take no action against Costello to collect on the judgment. Pursuant to the agreement, Costello assigned to Kong all present and future causes of action that Costello may have had against Allied arising out of her insurance coverage. The state court accepted the stipulation and entered final judgment in favor of Kong for $1,150,000, subject to the terms of the agreement between Kong and Costello.

Kong then filed a complaint in a Florida state court against Allied to collect on the judgment against Costello. Allied removed the action to the United States District Court for the Middle District of Florida on the basis of diversity jurisdiction. Allied was incorporated in Arizona and has offices in Arizona and California; Kong is a Florida citizen. Kong moved to remand, asserting that her

3

action against Allied was a direct action under Florida law. As such, she claimed

Allied's citizenship was governed by 28 U.S.C. § 1332(c). Section 1332(c)

provides that in a direct action against an insurance company, the insurer is deemed

to be a citizen of the state of the insured. Because Costello was a Florida citizen,

Kong argued Allied should be treated as one too. The district court rejected the

argument and denied the motion for remand.

At the same time the district court was considering Kong's motion to

remand, it also had before it Allied's motion to dismiss or, alternatively, stay the

case and order the parties to arbitrate the dispute. Allied argued that its policy with

Costello contained an arbitration clause, and because Costello assigned her rights

against Allied to Kong, Kong was bound by that clause.[1] In opposition, Kong

argued the arbitration provision should be governed by Florida law and offered

several theories as to why Florida law would not require her to arbitrate. The

---

[1] The policy's arbitration clause reads as follows:

**C. Arbitration.** If a dispute or claim shall arise with respect to any of the terms or provisions of this Policy, or with respect to the performance by any of the parties to the Policy, then any party or that party's authorized representative may, by notice as herein provided, require that the dispute be submitted within fifteen (15) days to an arbitrator in good standing with the American Arbitration Association under the Commercial Arbitration Rules of the American Arbitration Association then in effect. Any arbitration undertaken pursuant to the terms of this section shall occur in Orange County, California.

4

district court rejected Kong's contentions and directed the parties to arbitrate. The case was administratively closed pending the outcome of the arbitration.

Two years and several proceedings followed. The parties completed arbitration in California, where an arbitrator determined that Kong's injury was not covered under Allied's policy. The federal district court for the Central District of California entered the arbitration award as the judgment of the court. The Ninth Circuit then affirmed that decision on appeal.

While proceedings were still unfolding in California, Kong once again filed a motion in the Middle District of Florida to have her action against Allied remanded to a Florida state court. In her motion, Kong again argued her claim against Allied was a direct action, which would defeat diversity. The district court deferred ruling on the motion until the proceedings in California concluded. Once those proceedings had ended, however, the district court denied Kong's motion for essentially the same reasons it had denied her prior motion to remand—that is, that Kong's claim against Allied was not a "direct action" under §1332(c).

The district court then determined that it had been conclusively decided in the California proceedings that Allied's insurance policy with Costello did not cover Kong's injury. It therefore entered judgment in favor of Allied.

5

## II

Kong argues before this Court that the district court erred in concluding it had diversity jurisdiction. She maintains that her claim against Allied falls within the direct-action provision of 28 U.S.C. § 1332(c) and thus defeats diversity jurisdiction. In response, Allied contends that Kong's claim against it is not a "direct action" within the meaning of the diversity statute.

Section 1332(c) defines a corporation's citizenship for the purposes of determining diversity. It provides that a corporation is generally deemed to be a citizen of every state in which it was incorporated, as well as the state in which it maintains its principal place of business. 28 U.S.C. § 1332(c). However, the statute creates an exception for insurance companies in certain circumstances. It provides that "in any direct action against the insurer of a policy or contract of liability insurance . . . to which action the insured is not joined as a party–defendant, such insurer shall be deemed a citizen of every State and foreign state of which the insured is a citizen." *Id.* In other words, if a third-party plaintiff brings a direct action against a tortfeasor's liability insurer, the insurer is considered a citizen of the insured's state.

Section 1332(c) does not define what constitutes a direct action for purposes of the diversity determination. As this Circuit has recognized, however, courts have

6

"uniformly defined" the term "direct action" to refer to "those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer *without joining the insured or first obtaining a judgment against him*." *Fortson v. St. Paul Fire & Marine Insurance Co.*, 751 F.2d 1157, 1159 (11th Cir. 1985) (emphasis added) (quoting *Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 901 (9th Cir. 1982)). Leading treatises have adopted a similar approach. *See, e.g.*, 7A Steven Plitt et al., *Couch on Insurance 3d* § 107:4 (1995) ("Where one in the position of a judgment creditor as a result of having obtained a judgment against a tortfeasor commences an action against the tortfeasor's liability insurer to recover under the policy the damages for which the tortfeasor was adjudicated liable, such action is not a direct action within the meaning of the proviso to 28 U.S.C.A. § 1332(c)(1)."); 1 Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes*, § 7.07, at 664 (16th ed. 2012) ("[D]irect action statutes are not to be confused with certain state statutes that permit a suit directly against an insurer after a judgment has been secured against the insured.").

The legislative history of § 1332(c) likewise demonstrates that, for purpose of demonstrating diversity, a direct action is one in which an injured third-party claimant sues an insurance company for payment of a claim without first joining or

obtaining judgment against the company's insured. In 1964, Congress amended § 1332 in order to eliminate diversity jurisdiction over "suits on certain tort claims in which both parties are local residents, but which, under a State 'direct action' statute, may be brought directly against a foreign insurer carrier *without joining the local tort-feasor as a defendant*." S. Rep. No. 1308, 88th Cong., 2d Sess. (1964) (emphasis added). The amendment to § 1332(c) was a direct response to these direct-action statutes, which existed only in Louisiana and Wisconsin. *Id.*

It was the effect of the Louisiana statute that Congress found particularly troubling. *Id.* Louisiana law permitted broad appellate review of jury verdicts, which sent local plaintiffs flocking to federal court to pursue ordinary state law tort claims. 13 Charles Alan Wright et al., *Federal Practice and Procedure* § 3629 (3d ed. 1998). This peculiar effect caught the attention of not only legislators but also Justice Felix Frankfurter, who expressed concern over such a jurisdictional oddity: "Here we have a Louisiana citizen resorting to the federal court in Louisiana in order to avoid consequences of the Louisiana law by which every Louisiana citizen is bound when suing another Louisiana citizen." *Lumbermen's Mut. Cas. Co. v. Elbert*, 348 U.S. 48, 56 (1954) (Frankfurter, J., concurring).

As this history illustrates, § 1332(c) was amended to prevent plaintiffs from manipulating federal jurisdiction in order to seek the shelter of a more favorable

8

forum. This problem does not occur, however, if a state requires its tort plaintiffs to first join or obtain judgment against the insured as a prerequisite to suing an insurer. In those instances, a plaintiff cannot manipulate jurisdiction to find the most favorable forum for a state law claim; rather, that claim *must* be brought in state court. This is because joinder of a local insured will necessarily defeat complete diversity, and a judgment against the insured will guarantee the merits of a state tort claim have been resolved in state court.

Thus, it is clear that the key feature of a direct action under § 1332(c) is, and always has been, the plaintiff's ability "to skip suing the tort feasor and sue directly his insurance carrier." *Powers v. Cont'l Ins. Co.*, 753 F.2d 1574, 1578 (11th Cir. 1985) (Nichols, J., concurring). Florida precludes such actions by requiring its tort plaintiffs to "first obtain a settlement or verdict" against an insured as a "condition precedent" to maintaining a cause of action against the insurer. Fla. Stat. § 627.4136. Accordingly, Kong's claim against Allied does not fall within § 1332(c)'s direct-action exception. Kong is a Florida citizen; Allied is an Arizona corporation. The parties are completely diverse. We therefore affirm the district court's order denying Kong's motions to remand for lack of diversity jurisdiction.[2]

---

[2] Nothing in this opinion is intended to cast doubt on the continuing validity of *Fortson v. St. Paul Fire & Marine Insurance Co*, 751 F.2d 1157 (11th Cir. 1985). In *Fortson*, this Circuit determined that an action is not a direct action "unless the cause of action against the insurance company is of such a nature that

9

## III

Kong also challenges the district court's order compelling the parties to arbitrate, though she does not directly characterize her argument as such. She maintains that if this is indeed a diversity case, the district court erred in failing to apply Florida law. Kong asserts three reasons why the district court's order compelling arbitration was improper under Florida law. First, Kong argues that she was not subject to Allied's arbitration policy as a matter of Florida law. Second, she contends the Florida Arbitration Code requires arbitration to have occurred in Florida, not California. Third, she asserts that issues about the scope of insurance coverage are not arbitrable under Florida law. Before turning to these arguments, however, it is necessary first to address whether they are properly before this Court on appeal.

## A

Allied argues this appeal is limited to the single issue of diversity jurisdiction. Rule 3 of the Federal Rules of Appellate Procedure requires that a notice of appeal "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). Allied contends Kong's notice of appeal specifies that

---

the liability sought to be imposed could be imposed against the insured." *Id.* at 1159. Today we emphasize that an action is also not a direct action if a plaintiff must first join or obtain judgment against the insured as a prerequisite for suing an insurer.

10

she is appealing only the district court's order denying her second motion to remand for lack of jurisdiction. Because the district court's order on Allied's motion to compel arbitration is not specified in Kong's notice of appeal, Allied argues that Kong's challenge to the district court's arbitration order is not properly before this Court in this appeal. This argument fails.

Kong's notice of appeal specified that she was appealing both the remand order *and* the final judgment. "[T]he appeal from a final judgment draws in question all prior non-final orders and rulings that produced the judgment." *Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989). The district court's order compelling arbitration was a step toward the final judgment in favor of Allied. Thus, Kong's appeal from the final judgment in this case calls into question the district court's arbitration order. Consequently, we conclude we have jurisdiction to review that order on appeal.

**B**

Having determined that Kong effectively appealed the district court's arbitration order, we turn to the merits of Kong's argument. This Court reviews de novo a district court's order compelling arbitration. *Emp'rs Ins. of Wausau v. Bright Mental Specialties, Inc.*, 251 F.3d 1316, 1321 (11th Cir. 2001).

11

Kong argues that, as a matter of Florida law, she cannot be bound by an arbitration clause in a contract between Allied and Costello. She is correct that Florida law governs the issue whether a contract may be enforced by or against a nonparty. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (observing that the Federal Arbitration Act, discussed below, does not "purport[] to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)"); *see also Perry v. Thoma*s, 482 U.S. 483, 492 n.9 (1987) ("Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."). "Under Florida law, the assignment of a contract right does not entail the transfer of any duty to the assignee, unless the assignee assents to assume the duty." *Shaw v. State Farm Fire & Cas. Co.*, 37 So. 3d 329, 332 (Fla. Dist. Ct. App. 2010), *disapproved of on other grounds by Nunez v. Geico Gen. Ins. Co.*, 117 So. 3d 388 (Fla. 2013).

In *Cone Constructors, Inc. v. Drummond Community Bank*, 754 So. 2d 779 (Fla. Dist. Ct. App. 2000), a Florida District Court of Appeals considered whether a contracting party's assignee may be bound by a contract's arbitration provision. There, a power company had assigned its accounts receivable to its bank. *Id.* at 779. The bank eventually brought suit against one of the power company's debtors.

12

The debtor moved to compel arbitration pursuant to its underlying contract with the power company. *Id.* at 779–80. The court held that the bank was subject to the arbitration provision. *Id.* at 780. In so doing, it concluded that arbitration is a "remedial mechanism" that is binding on an assignee. *Id.* As such, "[e]ven an assignment only of contract 'rights' not entailing any duty of performance must be deemed to include the bargained-for remedial procedure." *Id.* (citation omitted) (quoting *Banque De Paris et des Pays-Bas v. Amoco Oil Co.*, 573 F.Supp. 1464, 1469–74 (S.D.N.Y. 1983)); *see also Marcum LLP v. Potamkin*, 107 So. 3d 1193, 1195 (Fla. Dist. Ct. App. 2013) (concluding the term "party" as used in Florida's arbitration code should not be interpreted "to exclude a contracting party's assignee").

While *Cone Constructors* is the only reported case to address whether *assignees* are bound by a contract's arbitration provision, a number of cases have found that other nonsignatories may be compelled to arbitrate. For example, Florida courts have required third-party beneficiaries to arbitrate. *E.g.*, *Pulte Home Corp. v. Bay at Cypress Creek Homeowners' Ass'n, Inc.*, 118 So. 3d 957, 958 (Fla. Dist. Ct. App. 2013) (compelling nonsignatory homeowners to arbitrate a claim arising under a preexisting contract between a builder and a homeowners' association). They likewise have subjected plaintiffs in wrongful-death actions to

13

arbitration provisions contained in a decedent's contract. *Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 762 (Fla. 2013). Moreover, under Florida law, a "nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract." *Germann v. Age Inst. of Fla., Inc.*, 912 So. 2d 590, 592 (Fla. Dist. Ct. App. 2005).

We are persuaded that Kong is subject to the arbitration provision as a matter of Florida law. Florida courts have exhibited a willingness to compel a number of different nonsignatories to arbitrate. This suggests Florida law does not treat arbitration as a duty that requires Kong's assent before she can be subject to the policy's arbitration provision. Rather, as the court in *Cone Constructors* indicated, Florida law treats arbitration as a "remedial mechanism" that is included in any assignment. We therefore conclude Kong is bound by the insurance policy's arbitration clause as a matter of Florida law.

## C

Kong contends that if she is bound by the arbitration provision, then the district court erred in concluding that the arbitration provision was subject to the Federal Arbitration Act ("FAA") rather than Florida state law. She contends that Florida law must apply if this is truly a diversity case. She further contends that the

14

McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, displaces the FAA and requires the district court to have applied Florida law. Kong maintains that under Florida law, the district court erred in compelling Kong to arbitrate in California and in compelling arbitration of an insurance-coverage dispute.

The FAA is not rendered inapplicable by the simple fact that this is a diversity case. The FAA applies to all contracts involving interstate commerce. 9 U.S.C. §§ 1–2. The Act reflects a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Therefore, if a contract involves interstate commerce, a court must resolve arbitration disputes according to the FAA, regardless of whether that court is a federal court sitting in diversity. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 271 (1995) ("[T]he Act applie[s] in diversity cases because Congress had so intended.").

Here, the insurance contract between Allied and Costello involved interstate commerce. Allied is an Arizona corporation, and Costello is a citizen of Florida. Costello purchased her policy with Allied through her membership with the American Massage Counsel, a California corporation. Accordingly, because the

15

insurance policy involved interstate commerce, its arbitration provision is governed by FAA.

This, however, does not end our inquiry. Even though the FAA applies in diversity cases, we must consider whether the McCarran–Ferguson Act requires the FAA to yield to Florida law in this particular case. The McCarran–Ferguson Act provides that federal law will not preempt a state insurance statute unless the federal law specifically relates to the business of insurance. 15 U.S.C. § 1012. "The Act thus bars the application of federal law if (1) the federal statute at issue does not specifically relate to the business of insurance; (2) the state statute at issue was enacted for the purpose of regulating the business of insurance; and (3) application of the federal statute would invalidate, impair, or supersede the state statute." *Moore v. Liberty Nat. Life Ins. Co.*, 267 F.3d 1209, 1220 (11th Cir. 2001) (alterations and internal quotation marks omitted) (quoting *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999)).

Kong maintains that Florida law, not the FAA, should apply here because the FAA does not relate to insurance. While Kong is correct that the FAA does not relate to insurance, she has not identified a single state *insurance* statute that would be invalidated, impaired, or superceded by the application of the FAA. She contends that Florida law prevents a court from compelling parties to arbitrate

16

outside of Florida. But the statute that Kong cites is found in the *Arbitration* Code, not the Insurance Code. Fla. Stat. § 682.19. That statute applies to all arbitration agreements, not just those found in insurance contracts. And while certain provisions of the Insurance Code do pertain to arbitration, none establishes general venue regulations for arbitration in insurance disputes. *See, e.g.*, *id.* § 631.206 (voiding arbitration agreements entered into by insurers in a receivership); *id.* § 627.4147 (regulating arbitration provisions in medical malpractice insurance contracts). Similarly, Kong cites a number of cases for the proposition that, as a matter of Florida law, parties may not arbitrate issues of insurance coverage. However, she does not identify (and the cited cases do not concern) a single Florida insurance statute that forbids arbitration of coverage issues. Therefore, with respect to both venue and the arbitrability of coverage disputes, we conclude the McCarran–Ferguson Act does not prevent the FAA from preempting Florida law.

Under the FAA, we resolve these issues by turning to the intent of the parties. Because the FAA is based on the premise that arbitration is strictly a matter of contract, "the parties to an arbitration agreement should be at liberty to choose the terms under which they will arbitrate." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 472 (1989) (internal quotation marks omitted). Where parties have defined the terms of their arbitration

17

agreement, a court should not "force the parties to arbitrate in a manner contrary to their agreement." *Id.* Here, the insurance policy specifies that the parties agreed to arbitrate in California. Similarly, the policy authorized the parties to arbitrate *any* "dispute or claim [that] shall arise with respect to any of the terms of this [p]olicy." Nothing in the agreement precludes the parties from arbitrating the scope of the insurance coverage. Accordingly, the district court did not err in ordering the parties to arbitrate pursuant to the terms of the policy's arbitration provision.

## CONCLUSION

Kong's action against Allied is not a direct action within the meaning of 28 U.S.C. § 1332(c). Therefore, the district court did not err in denying Kong's motion to remand for lack of diversity jurisdiction. Moreover, the arbitration provision in this case is controlled by the FAA, not Florida law. The arbitration provision clearly requires the parties to arbitrate in California, and it authorizes arbitration of any policy dispute, including disputes over the scope of coverage. Therefore, the district court did not err in compelling the parties to arbitrate pursuant to the terms set forth in the policy.

**AFFIRMED.**