LOGUE, J.
Juan Mendez, Jr. (“the son”) appeals a trial court order compelling arbitration of a claim he filed on behalf of Juan Mendez, Sr. (“the father”) against Hampton Court Nursing Center, LLC (“the facility”), for alleged negligence in the care of the father while he resided at the facility. Because the father was the intended third-party beneficiary of the contract that contained the arbitration clause, we affirm.
FACTS AND PROCEDURAL HISTORY
On March 13, 2009, the father was admitted to the facility. On the day the father was admitted, a doctor employed by the facility determined the father lacked the capacity to give informed consent or make medical decisions. The admission forms included an agreement for care (“the agreement”). The agreement is the contract under which the facility provided the father with the various residential, nursing, and other services associated with residency at a nursing home facility. The agreement contained a broad arbitration clause, as follows:
Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration in accordance with the provisions of the Florida Arbitration Code found at Chapter 682, Florida Statutes, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
Although the son was not acting under a power of attorney at that time, he signed the agreement on a signature line indicating “signature of resident’s representative.” Below that signature block, the agreement included the following language:
In the event that the resident has appointed a representative to control his/ her assets, and even if such appointment has not been made through a legal document, the resident’s representative shall be fully bound to the extent of those assets to the terms of this Agreement.
The father resided at the facility for approximately four years, from early 2009 until his death in late 2013. His residency included years before and after the incident giving rise to this lawsuit. In July 2011, while residing at the facility, the father’s eye became infected and had to be removed. The father subsequently gave the son power of attorney. In December 2012, the son brought suit against the facility on behalf of the father. The facility moved to compel arbitration on the basis of the arbitration clause in the agreement. The son asserted that the arbitration clause was not binding on the father, who was not a party to the agreement. The trial court compelled arbitration and this appeal follows.
ANALYSIS
“The Florida Supreme Court has held that ‘arbitration is a favored means of dispute resolution.’ ” Prudential Sec., Inc. v. Katz, 807 So.2d 173, 174 (Fla. 3d DCA *674 2002) (quoting Roe v. Amica Mut. Ins. Co., 583 So.2d 279, 281 (Fla.1988)). In Florida, “[arbitration provisions are generally favored by the courts.” Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005) (citing Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999)). Where possible, courts “should resolve all doubts in favor of arbitration rather than against it.” Katz, 807 So.2d at 174 (citing Ronbeck Const. Co., Inc. v. Savanna Club Corp., 592 So.2d 344, 346 (Fla. 4th DCA 1992)).
It is well-established that “[arbitration clauses in contracts are binding on thrd party beneficiaries.” Orion Ins. Co. v. Magnetic Imaging Sys. I, 696 So.2d 475, 478 (Fla. 3d DCA 1997) (citing Terminix Int’l Co., LP v. Ponzio, 693 So.2d 104, 109 (Fla. 5th DCA 1997)); see also Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, 778 So.2d 1089, 1090 (Fla. 4th DCA 2001); Zac Smith & Co., Inc. v. Moonspinner Condo. Ass’n, Inc., 472 So.2d 1324, 1325 (Fla. 1st DCA 1985). This is true even if the tMrd-party beneficiary did not sign the contract containing the arbitration agreement: “a nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract, or if the nonsigna-tory is specifically the intended third-party beneficiary of the contract.” Germann v. Age Inst. of Fla., Inc., 912 So.2d 590, 592 (Fla. 2d DCA 2005).
Here, the father is not merely the incidental beneficiary of the agreement, he is the intended third-party beneficiary of the agreement. The intent of the parties to the agreement was to arrange for the father’s care at the facility, and the father received the benefit of the parties’ bargain under that agreement for the duration of his residency at the facility. As a third-party beneficiary to the agreement, the father is bound by the arbitration provision.
The First District came to a similar conclusion in Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham, 953 So.2d 574 (Fla. 1st DCA 2007). In Linton, a nursing home facility moved to compel arbitration in a suit brought on behalf of Mrs. Linton, its deceased former resident. Id. at 576. The plaintiff maintained that the resident was not bound by the arbitration clause contained in the residency agreement signed by her adult son because her son had no authority to sign the agreement on her behalf. Id. The First District held:
[W]e reject the plaintiffs argument that there was not a valid agreement to arbitrate that was binding on Mrs. Linton, because she did not sign the agreement. In general, arbitration provisions are personal covenants that bind only the parties thereto. But the trial court correctly concluded that Mrs. Linton was an intended third-party beneficiary of the agreement in the present case. A nonsignatory third-party beneficiary is bound by the terms of a contract containing an arbitration clause.
Id. at 579. We apply similar reasoning to the analogous facts presented here in reaching the conclusion that the father is bound by the arbitration clause in the agreement.
We recognize, however, other district courts have held, for a variety of reasons, that nursing home residents who are non-signatories to the care agreements under which they receive care at a facility are not bound by the arbitration clauses found in those care agreements. In these cases, an adult family member executed the care agreement to obtain care and residency for a sick or elderly parent or relative. The decisions often omit discussion of the issue of whether the resident was a third-party *675 beneficiary, but the resident’s status is apparent from the facts of each case.
In Lepisto v. Senior Lifestyle Newport Limited Partnership, 78 So.3d 89 (Fla. 4th DCA 2012), the Fourth District held that a resident was not bound by an arbitration clause contained in a residency contract signed by his wife, and to which the resident was the intended third-party beneficiary. The court noted that the wife only signed the contract as the “financially responsible” party, not as the “resident’s representative,” although she could have signed the contract in either capacity. Id at 92. As such, the court concluded that the wife signed in her individual capacity and did not bind the husband to the contract. Id; see also Fletcher v. Huntington Place Ltd. P’ship, 952 So.2d 1225, 1227 (Fla. 5th DCA 2007) (holding “[t]he Admissions Agreement, which contains the arbitration agreement, indicate[d] that Fletcher did not sign the agreement in her capacity as her mother’s representative,” where daughter signed- in area indicating financial responsibility).
In Perry ex rel. Perry v. Sovereign Healthcare of Metro West, LLC, 100 So.3d 146, 148 (Fla. 5th DCA 2012) review dismissed 134 So.3d 450 (Fla.2014), the Fifth District held that a resident was not bound by the arbitration clause contained in the agreement for care executed by her daughter. The Fifth District reasoned that “there is no evidence [the resident] was incapable of signing the agreement on her own behalf’ and, further, that “there is absolutely no evidence that [the daughter] had the authority to bind [the resident] to the arbitration agreement.” Id.
We respectfully disagree with these decisions. We cannot reconcile them either with the ordinary rules of law governing third-party beneficiaries and arbitration agreements or with Florida’s avowed public policy to favor arbitrations. The principle that a third-party beneficiary is bound by an arbitration provision does not depend upon whether the party to the agreement signs only as the “financially responsible party.” It turns on whether the party that is being bound was the third-party beneficiary. In all of these cases, the purpose of the agreement is to obtain residential and medical care for an elderly parent or relative. The elderly parent or relative was therefore a third-party beneficiary and, accordingly, bound by the arbitration provision. Orion Ins. Co., 696 So.2d at 478; Martha A. Gottfried, Inc., 778 So.2d at 1090; Ponzio, 693 So.2d at 109; Zac Smith & Co., Inc., 472 So.2d at 1325.
Similarly, the principle that a third-party beneficiary is bound by an arbitration agreement does not depend upon whether the party who signed the agreement for care had actual or apparent authority to agree to arbitration: it turns only on whether the resident accepted the benefits of the contract and thereby was a third-party beneficiary. Martha A. Gottfried, Inc., 778 So.2d at 1090 (holding that nonsignatory to contract) was “bound by her agreement to arbitrate, as having accepted the economic and professional benefits of [signatory’s] membership with the board”).
For the same reason, it is irrelevant to the third-party beneficiary analysis whether the son’s signature as “Resident’s Representative” on the agreement qualified as the signature of the father’s “designee or legal representative” under section 400.151, Florida Statutes. Whether or not the son’s signature so qualified, the father resided and received care at the facility for years pursuant to the agreement and was therefore a third-party beneficiary bound by the arbitration provision. See Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero, 827 So.2d 338, 339 (Fla. 3d *676 DCA 2002) (“A contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract.”).
Waiver of the right to a jury trial is matter of great consequence. The jury trial reflects the ideals of democracy, local decision making, and civic virtue upon which our form of government is built. It is no coincidence that trial by jury is expressly mentioned in the Declaration of Independence, the Constitution, and three different times in the Bill of Rights. A public trial before a jury of one’s peers remains the best way to ensure the full measure of American justice. As common law judges, we instinctively favor a trial by jury, particularly in cases where negligence may be extreme and the personal injuries horrific. Nevertheless, people have a right to forego a jury trial and the other extensive protections provided by our legal system and agree to the faster, cheaper, private, and less comprehensive method of resolving disputes provided by arbitration.
We also recognize the more troubling problem that elderly and ill relatives are often admitted to these facilities under hurried and stressful circumstances, sometimes immediately upon release of the relative from a hospital, during which it is not practicable to expect that the forms for admission are carefully reviewed prior to being signed. In upholding the trial court’s decision to enforce the arbitration clause here, we are bound by longstanding principles of contract and arbitration law— parties are free to enter into contracts as they see fit; arbitration clauses are favored; and parties are held to have read contracts that they sign. If the policy concerns raised by the realities of how these arbitration provisions are entered into are to be remedied, that remedy is properly undertaken by the Legislature.
CONCLUSION
For the foregoing reasons, we hold that the father is bound by the arbitration provision contained in the agreement for care executed by his son, and to which the father was the intended third-party beneficiary.
Affirmed.