NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

SOVEREIGN HEALTHCARE OF TAMPA, )
LLC; SOVEREIGN HEALTHCARE )
HOLDINGS, LLC; SOUTHERN )
HEALTHCARE MANAGEMENT, LLC; )
JOHN J. NOTERMANN; R. MARK )
CRONQUIST; TRACY NICOLE CRYREE; )
BRUCE S. BONSEL; KIRK ALAN COPLEY;)
and SANDRA ANN CAVANAUGH-SUTKUS)
(as to Bayshore Point Nursing & Rehab )
Center), )
)
Appellants, )
)
v. ) Case No. 2D13-2083
)
THE ESTATE OF WILLIAM S. )
YARAWSKY, by and through Theresa )
Yarawsky, personal representative, )
)
Appellee. )
_____ )

Opinion filed November 7, 2014.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Hillsborough
County; James D. Arnold, Judge.

Thomas A. Valdez of Quintairos, Prieto,
Wood & Boyer, P.A., Tampa, for Appellants.

Isaac R. Ruiz-Carus, Kathleen Clark Knight,
and Megan L. Gisclar of Wilkes & McHugh,
P.A., Tampa, for Appellee.

MORRIS, Judge.

Sovereign Healthcare of Tampa, LLC, and other nursing home defendants (collectively referred to as Sovereign) appeal a trial court order rescinding an earlier order granting arbitration. We affirm the order on appeal for the reasons explained below.

### I. Background

Mr. Yarawsky was a resident of Sovereign's nursing home for ten months. After his death, his estate filed suit against Sovereign alleging negligence and other violations of his nursing home resident's rights. In October 2011, Sovereign moved to compel arbitration on the basis of an arbitration provision contained in the resident admission and financial agreement executed when Mr. Yarawsky became a resident of the nursing home. In April 2012, the trial court entered an order compelling arbitration.

In September 2012, the estate filed a motion to reconsider the order compelling arbitration, raising an objection to the arbitrator selected by Sovereign. In November 2012, the estate filed an amended motion to reconsider, further arguing that the Fifth District had recently held that a similar arbitration provision was unenforceable under similar circumstances. See Perry ex rel. Perry v. Sovereign Healthcare of Metro W., 100 So. 3d 146 (Fla. 5th DCA 2012) (decided October 12, 2012). The estate argued that Mr. Yarawsky did not sign the resident admission and financial agreement and that Mrs. Yarawsky, who signed the agreement as the responsible party, did not have authority to sign on Mr. Yarawsky's behalf. After holding a hearing in November 2012, the trial court stayed the matter pending the issuance of the mandate in Perry. After the mandate issued in Perry, the trial court held a second hearing in February

2013 and subsequently entered the order granting the estate's motion and rescinding the April 2012 order compelling arbitration.

### II. Analysis

Even though the trial court did not explicitly set forth its reason for rescinding the order compelling arbitration, the record indicates that the trial court likely based its decision on Perry, which was argued by the estate below. In Perry, the nursing home moved to compel arbitration based on the terms of a residency agreement signed by the daughter of the resident. Id. at 146-47. The Fifth District noted that even though the residency agreement was between the nursing home and the resident, the resident never signed the agreement and the resident's name never appeared in the agreement. Id. at 147. The agreement allowed a person to sign on the resident's behalf and provided a place for that person to indicate his or her relationship to the resident, but that portion of the agreement was left blank. The daughter signed the agreement where it provided for a signature for a responsible party, but the court stated that "[i]t is apparent from the agreement that [the daughter] signed as the responsible party who undertakes the obligation of a guarantor for payment on behalf of the resident." Id. at 147-48. The court noted that nobody signed the agreement on behalf of the resident and held that the agreement could therefore not be enforced as to the resident. Id. at 148.

The Perry court went on to hold that there was "no evidence [that the resident] was incapable of signing the agreement on her own behalf" and that even if the daughter had signed on the mother's behalf, there was "absolutely no evidence that [the daughter] had the authority to bind [the resident] to the arbitration agreement." Id.

The Fifth District held that "it was error for the lower court to compel arbitration" and reversed the order granting binding arbitration. Id.

The relevant portions of the agreement in this case appear to be identical to those in Perry. And as in Perry, no one signed the agreement on behalf of the resident.[1] There was a line for a person to sign for the resident, but that line was left blank. In addition, the agreement stated that "[i]f an individual other than the [r]esident signs on behalf of the [r]esident," the individual should "indicate the relationship and obtain copies of relevant documentation at the time of admission." This section was also left blank. Instead, Mrs. Yarawsky signed the agreement in the place designated for the responsible party. As was the case in Perry, the agreement makes clear that the responsible party is the person obligated to pay for the resident's services out of the resident's assets. We note that even if Mrs. Yarawsky had signed "on behalf of the [r]esident," there was no evidence that she had the authority to sign on Mr. Yarawsky's behalf. The trial court properly relied on Perry in concluding that Mr. Yarawsky's estate was not bound by Mrs. Yarawsky's signature on the agreement. See also Stalley v. Transitional Hosps. Corp. of Tampa, 44 So. 3d 627, 630 (Fla. 2d DCA 2010) (holding that the resident was not bound by the arbitration agreement signed by the resident's wife because the resident's wife had authority to sign only papers for his admission and for medical treatment, which did not include the optional arbitration agreement);

_____

[1]We note that unlike the agreement in Perry, the agreement in this case listed Mr. Yarawsky in the space provided on the first page for the name of the resident. However, we do not believe that this fact is significant or renders Perry inapplicable, especially when it is clear in both cases that the admission agreements were intended to apply to the residents at issue. As explained in more detail above, we find significant the fact that no one signed the agreement on Mr. Yarawsky's behalf.

-4-

McKibbin v. Alterra Health Care Corp., 977 So. 2d 612, 613 (Fla. 2d DCA 2008) (holding that the resident's estate was "not bound to arbitrate because [the resident] did not sign the residency agreement that contained the arbitration agreement and her son, who signed the residency agreement, did not have the authority to bind [the resident] to arbitrate"; there was no evidence that the resident was mentally incapacitated, and the son's durable power of attorney did not give the "son the legal authority to enter into an arbitration agreement on behalf of his mother"); Blankfeld v. Richmond Health Care, Inc., 902 So. 2d 296, 300-01 (Fla. 4th DCA 2005) (en banc) (holding that resident's estate was not bound by arbitration clause within admissions agreement because the agreement was signed by resident's son; even though resident was incompetent due to senile dementia, resident's son was at best a health care proxy who could make only decisions related to healthcare and was not authorized to waive his mother's "right to trial by jury, to waive common law remedies, or to agree to modify statutory duties").

Sovereign argues that it is irrelevant whether Mrs. Yarawsky signed the contract on Mr. Yarawsky's behalf and whether she had the authority to sign on his behalf because Mr. Yarawsky was an intended third-party beneficiary of the agreement and was bound by the agreement because he received the benefit of the bargain of the agreement. See Alterra Healthcare Corp. v. Estate of Linton, 953 So. 2d 574, 579 (Fla. 1st DCA 2007) (holding that resident was bound by arbitration agreement signed by son because resident was an intended third-party beneficiary of the agreement). Many cases hold that a nonsignatory third-party beneficiary is bound by the terms of a contract containing an arbitration agreement. See, e.g., Germann v. Age Inst. of Fla., Inc., 912 So. 2d 590, 592 (Fla. 2d DCA 2005); Estate of Linton, 953 So. 2d at 579; Zac

-5-

Smith & Co. v. Moonspinner Condo. Ass'n, 472 So. 2d 1324, 1325 (Fla. 1st DCA 1985). But these cases do not discuss whether the person who signed the contract purportedly on behalf of the third-party beneficiary was actually authorized to do so. And more important, the cases are not applicable in this case because the agreement at issue was not actually signed on behalf of the resident.

The concept of a third-party beneficiary applies when "the parties to the contract intended that a third person should be benefited thereby," 11 Fla. Jur. 2d Contracts § 203 (2014), and there is no requirement that the third-party have knowledge of or accept the contract, see id. at § 209. But the concept of third-party beneficiary requires that there be at least two parties to the contract, i.e., a promisor and a promisee. See Zac Smith & Co., Inc., 472 So. 2d at 1324 ("A third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and the promisee."); 11 Fla. Jur. 2d Contracts §§ 203, 209; 3A Fla. Jur. 2d Arbitration and Award § 26 (2014) ("Where a contract contains an arbitration clause which is legally enforceable, a third-party beneficiary of the contract is bound thereby to the same extent that the promisee is bound.").[2] In this case, similar to the facts in

---

[2]In Stalley, 44 So. 3d at 632-33, this court addressed the concept of a third-party beneficiary. There, the facility argued that the resident was a third-party beneficiary of the arbitration agreement even though the resident had not signed the agreement and the resident's wife did not have authority to sign the agreement. This court noted that the arbitration agreement was a separate, optional contract from the admissions agreement and that the admissions agreement did not reference the arbitration agreement. The facility provided services to the resident independent of the arbitration agreement, and therefore, the resident was not an intended third-party beneficiary of the arbitration agreement. Id. at 633. Here, the arbitration agreement is not a separate agreement from the admission agreement and there is no evidence whether the provision of services to Mr. Yarawsky was dependent upon his acceptance of the arbitration agreement within the admissions agreement, so Stalley unfortunately

Perry, there was no promisee signing on behalf of the resident. Mrs. Yarawsky signed the agreement as the responsible party, who undertakes the obligation of a guarantor for payment, but nobody signed the contract on behalf of the resident. The majority of the provisions in the agreement address the resident's rights and obligations as a resident of the nursing home, and it is clear from the agreement that the responsible party has limited rights and obligations that are separate from those of the resident.

It is undisputed that Mr. Yarawsky did not sign the agreement and that no one signed as his legal representative in the spaces provided for the resident and his legal representative; Mrs. Yarawsky signed only in her individual capacity as the responsible party. See Lepisto v. Senior Lifestyle Newport P'ship, 78 So. 3d 89, 92 (Fla. 4th DCA 2012) (holding that although the wife had the authority to sign contract and arbitration addendum on behalf of her husband, the resident, "there [was] no evidence that she did so when she merely signed the [c]ontract and [a]ddendum in her individual capacity as the financially responsible party"); Fletcher v. Huntington Place P'ship, 952 So. 2d 1225, 1227 (Fla. 5th DCA 2007) (holding that admissions agreement, which included arbitration agreement, was not enforceable against resident's estate because resident's daughter "did not sign the agreement in her capacity as her mother's representative" but only signed as the financially responsible party). And the arbitration provision in this case expressly provides that "[i]t is the express intent of the parties to have a binding arbitration agreement[] and [that] the Facility and *the Resident and/or the Resident's Legal Representative acknowledge that, by their signatures of the*

_____

does not provide guidance on the issue of an intended third-party beneficiary on the facts in this case.

-7-

*Agreement*, they are expressly and voluntarily agreeing to a mutual arbitration of claims regardless of which party is making a claim." (Emphasis added.) Because nobody signed the agreement on behalf of the resident or as the resident's legal representative, Mr. Yarawsky is not a third-party beneficiary of the agreement or the arbitration provisions within the contract.[3] Because no one signed the contract on behalf of the resident, this case is distinguishable from Estate of Linton, on which Sovereign relies.

Recently, the Third District disagreed with Perry, Lepisto, and Fletcher in Mendez v. Hampton Court Nursing Center, LLC, 140 So. 3d 671 (Fla. 3d DCA 2014). In Mendez, the court stated that "[t]he principle that a third-party beneficiary is bound by an arbitration provision does not depend upon whether the party to the agreement signs only as the 'financially responsible party.' It turns on whether the party that is being bound was the third-party beneficiary." Id. at 675. In Mendez, the court held that the resident of the nursing home was the intended third-party beneficiary of the contract for care and had received the benefit of the bargain under the contract and therefore was bound by the arbitration provision in that contract, even though the resident himself did not sign the contract. However, the facts in Mendez are different from the facts in this case and the facts in Perry. In Mendez, on the day of admission, a doctor at the nursing home had "determined the [resident] lacked the capacity to give informed consent or

---

[3]Sovereign cites Integrated Health Services of Green Briar, Inc. v. Lopez-Silvero, 827 So. 2d 338, 339 (Fla. 3d DCA 2002), for the proposition that "[a] contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract." In Lopez-Silvero, a representative of the nursing home had not signed the nursing home's own contract and the court held that by providing services to the resident, the nursing home had clearly assented to the terms of its own contract. Id. But Lopez-Silvero does not discuss whether the concept of third-party beneficiary applies where the contract had not been signed on behalf of the resident, and the holding should not be extended to the facts of this case.

make medical decisions." 140 So. 2d at 673. More important, the resident's son "signed the agreement on a signature line indicating 'signature of resident's representative,' " who by the terms of the contract also happened to be the financially responsible party. Id. Therefore, in Mendez, a promisee (the resident's son) bound the third-party beneficiary (the resident) by signing the contract as the resident's representative, not simply as the financially responsible party, and it appears from the specific facts in that case that the promisee had the authority to sign for his father. The court in Mendez did not have before it the issue of the resident's relative signing the contract only as a financially responsible party or the issue of a resident's relative signing the contract on the resident's behalf without authority to do so; therefore, the Mendez court's statements on these issues are dicta.

We recognize that while these issues arise in the common circumstance of a resident's admission into a nursing home, these cases often involve different factual scenarios surrounding the patient's mental state and the specific terms of the agreement containing the arbitration provisions. In applying the case law above to the facts of this case, we conclude that Mr. Yarawsky was not a third-party beneficiary of the agreement containing the arbitration provision because no person with authority signed the agreement on his behalf. This holding is consistent with the general rule that "[o]ne who has not agreed, expressly or implicitly, to be bound by an arbitration agreement cannot be compelled to arbitrate." Regency Island Dunes, Inc. v. Foley & Assocs. Constr., 697 So. 2d 217, 218 (Fla. 4th DCA 1997) (citing Tartell v. Chera, 668 So. 2d 1105 (Fla. 4th DCA 1996)); see also Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999) ("[N]o party may be forced to submit a dispute to arbitration that the

party did not intend and agree to arbitrate.").  Mr. Yarawsky's estate is not bound by the arbitration provisions within the agreement, and we affirm the trial court's order rescinding the earlier order granting arbitration.

Affirmed.


KHOUZAM and CRENSHAW, JJ., Concur.