POLSTON, J.,
dissenting.
Instead of applying well-settled contract law regarding third-party beneficiaries, the majority creates a manifest injustice “standard” by turning reasoning from old law review articles and a plurality opinion from an 1800s New York case on its head. The majority’s decision will allow courts to arbitrarily disavow arbitration clauses as occurs here by Hampton Court being denied arbitration with Juan Mendez, Jr., the *153 very person who signed the contract at issue.
I.
The Third District Court of Appeal explained the facts and procedural history of the case as follows:
On March 13, 2009, the father was admitted to the facility. On the day the father was admitted, a doctor employed by the facility determined the father lacked the capacity to give informed consent or make medical decisions. The admission forms included an agreement for care (“the agreement”). The agreement is the contract under which the facility provided the father with the various residential, nursing, and other services associated with residency at a nursing home facility. The agreement contained a broad arbitration clause, as follows:
Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration in accordance with the provisions of the Florida Arbitration Code found at Chapter 682, Florida Statutes, and judgment upon the award rendered by the arbitrator(s) may be entered in any court haying jurisdiction thereof.
Although the son was not acting under a power of attorney at that time, he signed the agreement on a signature line indicating “signature of resident’s representative.” Below that signature block, the agreement included the following language:
In the event that the resident has appointed a representative to control his/her assets, and even if such appointment has not been made through a legal document, the resident’s representative shall be fully bound to the extent of those assets to the terms of this Agreement.
The father resided at the facility for approximately four years, from early 2009 until his death in late 2013. His residency included years before and after the incident giving rise to this lawsuit. In July 2011, while residing at the facility, the father’s eye became infected and had to be removed. The father subsequently gave the son power of attorney. In December 2012, the son brought suit against the facility on behalf of the father. The facility moved to compel arbitration on the basis of the arbitration clause in the agreement. The son asserted that the arbitration clause was not binding on the father, who was not a party to the agreement. The trial court compelled arbitration and this appeal [affirms].
Mendez v. Hampton Court Nursing Ctr., LLC, 140 So.3d 671, 673 (Fla. 3d DCA 2014).
II.
The majority obliterates longstanding Florida contract law applicable to third-party beneficiaries and denies Hampton Court’s right to arbitrate, even though arbitration provisions are favored. Jackson v. Shakespeare Found., Inc., 108 So.3d 587, 593 (Fla.2013) (“Courts generally favor [arbitration] provisions, and will try to resolve an ambiguity in an arbitration provision in favor of arbitration.”).
The law is well settled that the rights of third-party beneficiaries are limited by the terms of the contract. See 2 Williston on Contracts § 364A, at 873-74 & n. 5 (3d ed.1959) (collecting cases holding that a third-party beneficiary’s right is limited by the terms of the contract). Our district courts in Florida have long held this includes contractual arbitration provisions. 8 Florida Construction Law Manual *154 § 7:38 (2015-2016 ed.) (“Ordinarily, a third party beneficiary is bound by an arbitration clause in the contract under which the party claims third party beneficiary status.”). “Florida courts have required third-party beneficiaries to arbitrate.” Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1302 (11th Cir.2014). “ ‘[Traditional principles’ of state law allow a contract to be enforced by or against nonparties to the contract through ‘assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.’ ” Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) (quoting 21 Williston on Contracts § 57.19, at 183 (4th ed.2001)) (emphasis added).
To hold that arbitration is not required, the majority arbitrarily applies a manifest justice “standard," relying on law review articles from 1902 and 1928, and dicta from an 1859 New York plurality opinion. Majority op. at 150; Lawrence v. Fox, 20 N.Y. 268, 275 (1859) (stating that manifest justice might result in a different outcome from the case before it). Essentially, the majority asserts that, because the third-party beneficiary doctrine was originally based upon principles of equity, the doc-triné should yield when a court believes that enforcing an arbitration clause would be manifestly unjust. The majority attempts to persuade the reader of the propriety of turning the “manifestly just” language from the 1800s plurality on its head by quoting a 2007 edition of Corbin on Contracts and fairly recent law review articles regarding Professors Williston and Corbin. However, the majority ignores the fact that the two treatises that currently bear the names of Professors Williston and Corbin do not support the majority’s position. See 21 Williston on Contracts § 57:19, at 183 (4th ed. 2001) (“[Njonsigna-tories may be bound by arbitration agreements entered into by others where they have no greater rights than those of the party through whom they claim, applying traditional principles of agency and contract law, including assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel.”); 9-46 Corbin on Contracts § 46.9 (2015) (“Absent a contract term to the contrary, the beneficiary will be subject to an arbitration clause- in the contract for two reasons: (1) such holdings conform to the general principle that the terms of the contract define and limit the rights of the third party beneficiary; (2) there is a strong public policy in favor of arbitration.”). The majority’s position is simply out of step with binding legal doctrine.
Using its manifest injustice “standard,” the majority reasons that Juan Mendez, Jr., should not be required to arbitrate his father’s claims because his father did not sign the nursing home contract that included the arbitration clause. But Juan Mendez, Jr., signed the admissions contract on the line labeled “Resident’s Representative.”' Now, the son seeks to disavow the terms of the contract that he signed as a representative of his father, while currently- acting as a representative of his father’s estate. It is not manifestly unjust to enforce the terms of a contract against the same person who signed it.[1]
Additionally, the majority attempts to distinguish the claim at issue in this case from a claim raised by a third-party beneficiary. The majority agrees that “when a plaintiff sues under a contract to which the *155 plaintiff is not a party .,. we will ordinarily enforce an arbitration clause contained in that contract.” Majority op. at 149. But the majority claims that here “the father does not bring suit as a third-party beneficiary for the benefit of a contract signed by others.” Id. This is nonsensical. Perhaps the majority’s claim is related to its assertion that “the father’s estate sued for negligence and statutory violations — not to enforce the son’s contract with Hampton Court.” Id. at 149. However, Hampton Court’s duty to provide care to the father only arose based upon the contract signed by the son for the benefit of the father. Therefore, perhaps the majority is intending to hold that the enforcement of the contract would be manifestly unjust because the claim is outside the scope of the arbitration clause? This apparent mixture of different legal theories is incomprehensible and certainly not the law.
Further, the majority incorrectly states that the district courts disagree on whether a nursing home resident is bound by an arbitration clause in a nursing home contract when the resident did not sign or otherwise agree to the contract. Majority op. at 148. To the contrary, the district courts have all applied well-settled third-party beneficiary law and held that those residents are bound by the. arbitration clauses.
The majority acknowledges that the First and Third Districts have held that those residents are bound as a third-party beneficiary. Majority op. at 148. Indeed, the Third District has explained that “[arbitration clauses in contracts are binding on third party beneficiaries.” Orion Ins. Co. v. Magnetic Imaging Sys. I, 696 So.2d 475, 478 (Fla. Bd DCA 1997) (citing Terminix Int’l Co., LP v. Ponzio, 693 So.2d 104, 109 (Fla. 5th DCA 1997) (“As third party beneficiaries, these additional plaintiffs are bound by the arbitration provision.”)); see also Zac Smith & Co., Inc. v. Moonspinner Condo. Ass’n, Inc., 472 So.2d 1324, 1324 (Fla. 1st DCA 1985) (holding that “an arbitration clause in a contract is binding on a third-party beneficiary”). This is true even if the third-party beneficiary-did not sign the contract containing the arbitration agreement: “[A] nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract, or if the nonsignatory is specifically the- intended third-party beneficiary of the contract.” Germann v. Age Inst. of Fla., Inc., 912 So.2d 590, 592 (Fla. 2d DCA 2005).
But the majority incorrectly states' that the Second, Fourth, and Fifth Districts hold otherwise. Majority op. at 148 (stating that “[t]he First and Third Districts held that the resident is bound by the contract, because the resident is the intended third-party beneficiary of the contract” but that “[t]he Second, Fourth, and Fifth Districts held differently”).
The Second, Fourth, and Fifth Districts all acknowledge that third-party beneficiaries can be bound by arbitration provisions. See Terminix, 693 So.2d at 109 (citing Raffa Assocs. v. Boca Raton Resort & Club, 616 So.2d 1096 (Fla. 4th DCA 1998); Zac Smith 472 So.2d 1324). For example, the Fifth District has explained that “Florida courts have generally held that arbitration clauses in contracts may be enforced by and are binding on third party beneficiaries.” Hirshenson v. Spaccio, 800 So.2d 670, 673 (Fla. 5th DCA 2001) (citing cases); see also Lion Gables Realty Ltd. v. Randall Meek, Inc., 65 So.3d 1098, 1099 (Fla. 5th DCA 2011). The Fourth District also recognizes that “ordinarily a third-party beneficiary of a contract is bound by an arbitration clause in that contract.” Raffa Assocs., 616 So.2d at 1097; *156 see also Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc., 778 So.2d 1089, 1090 (Fla. 4th DCA 2001) (“[A] third party beneficiary to a contract can be compelled to arbitrate.”). Further, the Second District recently held, in Pulte Home Corp. v. Bay at Cypress Creek Homeowners’ Ass’n, Inc., 118 So.3d 957, 958 (Fla. 2d DCA 2013), that third-party beneficiaries can be compelled to arbitrate. In a parenthetical, the Second District explained that, “[a]s a basic derivative of the principle that a third-party beneficiary steps into the shoes of a contracting party and is subject to all provisions of [the] contract, a third-party beneficiary of a contract containing an arbitration provision can be compelled to arbitrate.” Id. (quoting J, Douglas Uloth & J. Hamilton Rial, III, Equitable Estoppel as a Basis for Compelling Nonsignatories to Arbitrate—A Bridge Too Far?, 21 Rev. Litig. 593, 602 (Summer 2002)).
The majority cites the Fifth District’s decision in Perry ex rel. Perry v. Sovereign Healthcare of Metro West, LLC,. 100 So.3d 146 (Fla. 5th DCA 2012), as the basis for its claim that the Fifth District has disavowed general third-party beneficiary doctrine in regard to nursing home contracts, but the holding in Perry, 100 So.3d at 147-48, was based upon the fact that the person who signed the contract in that case only signed as a guarantor for payment on behalf of the resident, not as the resident’s representative or the resident’s power of attorney. This difference is legally significant. See Fed. Deposit Ins. Corp. v. Univ. Anclote, Inc., 764 F.2d 804, 806 (11th Cir.1985) (“A guaranty is a collateral promise to answer for the debt or obligation of another.” (citing Nicolaysen v. Flato, 204 So.2d 547, 549 (Fla. 4th DCA 1967))).
Lepisto v. Senior Lifestyle Newport Limited Partnership, 78 So.3d 89, 92 (Fla. 4th DCA 2012), and Fletcher v. Huntington Place Limited Partnership, 952 So.2d 1225, 1227 (Fla. 5th DCA 2007), cited by the majority, are likewise distinguished on the basis that the contract indicated that the signor was a financial guarantor, not a representative for the resident. Finally, the majority cites In re Estate of McKibbin, 977 So.2d 612 (Fla. 2d DCA 2008), but that decision does not mention third-party beneficiaries at all. The Second District does explain that “there was no evidence that [the resident] was mentally or physically incapacitated to make decisions for herself,” which is factually different from the case before us. Id. at 613.
III.
In conclusion, I would follow well-settled contract law regarding third-party beneficiaries and not create a manifest injustice standard that allows the court to disavow arbitration proceedings on an ad hoc basis. I would not deny Hampton Court the right to arbitrate with Juan Mendez, Jr., the same person who signed the contract as the representative for his father.
I dissent.

. The majority once again misses the point in its discussion of agency law and medical incapacity. See majority op. at 151. Third-party beneficiary contract law, not agency law, controls this case,