# Supreme Court of Florida

_____

No. SC14-1349
_____

**JUAN MENDEZ, JR., etc.,**
Petitioner,

vs.

**HAMPTON COURT NURSING CENTER, LLC,**
Respondent.

[September 22, 2016]

PERRY, J.

Juan Mendez, Jr. (the "son"), as personal representative of the estate of Juan

Mendez, Sr. (the "father"), seeks review of the decision of the Third District Court

of Appeal in Mendez v. Hampton Court Nursing Center, LLC, 140 So. 3d 671 (Fla.

3d DCA 2014), on the ground that it expressly and directly conflicts with decisions

of the district courts of appeal on whether a nursing home resident is bound by an

arbitration clause in a nursing home contract, when the resident neither signed nor

otherwise agreed to the contract. We have jurisdiction. See art. V, § 3(b)(3), Fla.

Const.

This case concerns whether the father is bound by an arbitration clause in a nursing home contract signed by Hampton Court and the son, but not the father. The Third District found "that the father is bound by the arbitration provision contained in the agreement for care executed by his son, and to which the father was the intended third-party beneficiary." Mendez, 140 So. 3d at 676. We disagree. Accordingly, we quash the Third District's decision and remand for further proceedings consistent with this opinion.

## I. Facts and Procedure

Hampton Court Nursing Center ("Hampton Court") admitted the father to its nursing home facility in 2009. At that time, the son signed a nursing home contract with Hampton Court, providing for the father's residency and care at Hampton Court. The contract included an arbitration clause. The father did not sign the contract.

While under Hampton Court's care in 2011, the father developed an eye infection that eventually required the removal of his left eye. In 2012, the son filed suit on the father's behalf in the Circuit Court for the Eleventh Judicial Circuit, Miami-Dade County, alleging negligence and statutory violations. Hampton Court moved to compel arbitration and stay the judicial proceedings. The circuit court heard argument and granted the motion. The father appealed, but passed away while the appeal was pending. See id. at 673.

On appeal from the trial court's order, the Third District affirmed. Id. at 676. Citing Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham, 953 So. 2d 574 (Fla. 1st DCA 2007), the Third District held that the father was the intended third-party beneficiary of the nursing home contract, and accordingly, Hampton Court could bind him to its contract even though he never signed it. Mendez, 140 So. 3d at 674.

## II. The Conflict Cases

"Third persons who are not parties to an arbitration agreement generally are not bound by the agreement." 21 Williston on Contracts § 57:19, at 181 (4th ed. 2001). Notwithstanding that principle, the district courts disagree on whether a nursing home resident is bound by an arbitration clause in a nursing home contract, when the resident neither signed nor otherwise agreed to the contract.

The First and Third Districts held that the resident is bound by the contract, because the resident is the intended third-party beneficiary of the contract. See Mendez, 140 So. 3d at 674; Alterra Healthcare, 953 So. 2d at 579. Both courts emphasized that the resident is bound irrespective of whether the resident signed the contract, or whether the signing party had authority to act on the resident's behalf. See Mendez, 140 So. 3d at 674; Alterra Healthcare, 953 So. 2d at 579. As discussed below, we reject this view.

- 3 -

On similar facts, the Second, Fourth, and Fifth Districts held differently. See Perry ex rel. Perry v. Sovereign Healthcare Metro W., LLC, 100 So. 3d 146, 147-48 (Fla. 5th DCA 2012); Fletcher v. Huntington Place Ltd. P'ship, 952 So. 2d 1225, 1227 (Fla. 5th DCA 2007); Lepisto v. Senior Lifestyle Newport Ltd. P'ship, 78 So. 3d 89, 92 (Fla. 4th DCA 2012); In re Estate of McKibben, 977 So. 2d 612, 613 (Fla. 2d DCA 2008). These decisions analyzed the facts using an agency law framework and held that a resident was not bound by a contract that he or she did not sign, where the signing party did not agree to the contract on the resident's behalf or lacked the authority to act for the resident. See Perry, 100 So. 3d at 147-48; Fletcher, 952 So. 2d at 1227; Lepisto, 78 So. 3d at 92; McKibben, 977 So. 2d at 613. The Fifth District explicitly considered and rejected the type of third-party beneficiary argument upheld in Mendez and Alterra Healthcare. See Perry, 100 So. 3d at 147-48.

## III. The Third-Party Beneficiary Doctrine

Hampton Court urges us to adopt the rule of Mendez and Alterra Healthcare: that under the third-party beneficiary doctrine, a nursing home resident may be bound by a contract to which the resident never agrees. We disagree.

The doctrine of third-party beneficiaries provides that under certain circumstances, a person may sue to enforce a contract, even though the person is not a party to the contract. See 11 Fla. Jur. 2d Contracts § 206, at 406-07 (2008).

"To establish an action for breach of a third party beneficiary contract, [the third-party beneficiary] must allege and prove the following four elements: '(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach.' " Found. Health v. Westside EKG Assocs., 944 So. 2d 188, 194-95 (Fla. 2006) (quoting Networkip, LLC v. Spread Enters., Inc., 922 So. 2d 355, 358 (Fla. 3d DCA 2006)); see also Patrick John McGinley, 21 Fla. Prac., Elements of an Action § 603:1 (2015-2016 ed.).

Critically, the third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party—not the other way around. See, e.g., Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner, 612 So. 2d 1378, 1380 (Fla. 1993); Shingleton v. Bussey, 223 So. 2d 713, 715 (Fla. 1969). The third-party beneficiary doctrine does not permit two parties to bind a third—without the third party's agreement—merely by conferring a benefit on the third party. Mendez and Alterra Healthcare are not in accord with this principle.

We have previously held that "[w]e see no reason to allow [the non-contracting third-party beneficiary] to enjoy the benefits of the [contract] without bearing its burdens as well." Nat'l Gypsum Co. v. Travelers Indem. Co., 417 So. 2d 254, 256 (Fla. 1982) (holding that the non-contracting third-party beneficiary

- 5 -

had to comply with the contract's pre-litigation notice requirements if the third party wanted to sue to enforce the contract). We distinguish National Gypsum, however, because the third-party beneficiary in that case sued to enforce a contract between other parties; here, the father's estate sued for negligence and statutory violations—not to enforce the son's contract with Hampton Court.

This distinction is consistent with many of the authorities cited in Justice Polston's dissenting opinion. For instance, the dissent observes that "Florida courts have required third-party beneficiaries to arbitrate," Polston, J., dissenting op. at 16 (quoting Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1302 (11th Cir. 2014)); that "[o]rdinarily, a third party beneficiary is bound by an arbitration clause in the contract under which the party claims third party beneficiary status," Polston, J., dissenting op. at 3 (quoting 8 Fla. Prac., Constr. Law Manual § 7:38 (2015-2016 ed.)); and that "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through . . . third-party beneficiary theories,' " Polston, J., dissenting op. at 16 (quoting Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009) (emphasis removed)). We agree that when a plaintiff sues under a contract to which the plaintiff is not a party—unlike the father in this case—we will ordinarily enforce an arbitration clause contained in that contract, absent some other valid defense. Cf. Nat'l Gypsum, 417 So. 2d at 256. However, the rule of National Gypsum, does not apply here because the

father does not bring suit as a third-party beneficiary for the benefit of a contract signed by others. The circumstances presented in National Gypsum are not presented here. Neither Justice Polston's dissenting opinion, Mendez, nor Alterra Healthcare makes this distinction, and none finds support from National Gypsum.

Mendez and Alterra Healthcare also run contrary to the purpose behind the third-party beneficiary doctrine, which is to do justice for the non-contracting third-party beneficiary. From the early days of the third-party beneficiary principle, its proponents recognized that the third-party beneficiary rule was grounded in principles of justice and equity. See, e.g., Arthur L. Corbin, Law of Third Party Beneficiaries in Pennsylvania, 77 U. Penn. L. Rev. 1, 6 (1928); Samuel Williston, Contracts for the Benefit of a Third Person, 15 Harv. L. Rev. 767, 772-73 (1902). The seminal case establishing the third-party beneficiary doctrine argued that "manifest justice" required the establishment of the third-party beneficiary doctrine, even if traditional contract principles demanded a different result. Lawrence v. Fox, 20 N.Y. 268, 275 (1859) (plurality opinion).

Justice Polston's dissent disapproves of these authorities, criticizing them as old. See Polston, J., dissenting op. at 14, 17. Lawrence is now "universally recognized as the landmark case in the evolution of the contract law of third party beneficiaries in the United States." 9 Corbin on Contracts § 42.3, at 16 (rev. ed. 2007). Professor Williston's writings are instructive "because almost immediately

after Lawrence v. Fox was decided, contract law became dominated by the doctrinal reasoning of the classical contract school, as exemplified . . . in the commentaries of figures like . . . Williston." Melvin A. Eisenberg, Third-Party Beneficiaries, 92 Colum. L. Rev. 1358, 1365 (1992). Professor Corbin's thoughts are especially noteworthy because he "had more influence on the sustained development of [the third-party beneficiary] rule than anyone else before him or since." Anthony Jon Waters, The Property in the Promise: A Study of the Third Party Beneficiary Rule, 98 Harv. L. Rev. 1109, 1172 (1985). If Lawrence and Professors Corbin's and Williston's writings are invalid merely because of their age, then so is Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803).

Neither Mendez nor Alterra Healthcare squares with the principles of justice and equity underlying the third-party beneficiary doctrine: both decisions permit contracting parties to bind the non-contracting party without the non-contracting party's consent. See Mendez, 140 So. 3d at 674-76; Alterra Healthcare, 953 So. 2d at 579. We would never enforce an admission agreement if a nursing home obtained a resident's signature by threatening the violent destruction of the resident's property unless the resident signed the agreement. Cf. Casto v. Casto, 508 So. 2d 330, 335 (Fla. 1987) (invalidating a prenuptial agreement in part because of the husband's ultimatum that the wife "sign the agreement or he would blow up the house and throw Clorox all over her clothes"). If we will not enforce a

contract when a party agrees under threat or duress, then we should not enforce a contract in the absence of the party's agreement altogether.

## IV. Agency Law and Medical Incapacity

Justice Polston's dissent also attempts to distinguish this case on other grounds, claiming that the son signed the admissions contract as a representative of his father. Polston, J., dissenting op. at 18. The record in this case does not support this analysis.

First, we cannot conclude that the son was the father's representative. When "the totality of the evidence is susceptible to multiple inferences and interpretations, the existence and scope of an agency relationship are generally questions of fact." Villazon v. Prudential Health Care Plan, Inc., 843 So. 2d 842, 853 (Fla. 2003); see also Goldschmidt v. Holman, 571 So. 2d 422, 424 (Fla. 1990) ("[T]he existence of an agency relationship is normally one for the trier of fact to determine, [except where] there [is] no evidentiary question . . . for the [factfinder] to resolve." (citation omitted)). In this case, the record contains conflicting evidence on the question of agency. On one hand, the nursing home contract contains the son's signature on a line labeled "Resident's Representative." On the other hand, the record also contains the son's affidavit attesting to the fact that the father had not granted the son any written authorization to act as the father's agent, nor had the father "otherwise directed, appointed, or instructed [the son] in any

way on or prior to [the date of the father's admission to Hampton Court] to carry out [the father's] affairs for him relating to any matter." We need not remand to the trial court to hold an evidentiary hearing and determine whether the son was the father's representative, however, because Hampton Court expressly disclaims any reliance on agency principles. See Hampton Court's Answer Br. 5 (stating that "an argument . . . based on principles of Agency Law [sic] . . . has no relevance in cases like this one"); id. at 14 (noting that Hampton Court has "made no argument based on agency law principles"); Oral Arg. at 33:39 (Q: "So are you saying [that the son was] the father's agent?" A: "No, Your Honor. No.").

Finally, we hold that the father's mental capacity does not impact the outcome of this case. Hampton Court explicitly concedes that a nursing home resident's "mental capacity or competence is irrelevant to the question of whether an individual can be bound to the terms of a contract as a third party beneficiary." Hampton Court's Answer Br. 13-14; id. at 18 (observing that a nursing home resident's "capacity to give informed consent or make medical decisions . . . is irrelevant in a third party beneficiary analysis"); id. at 30 ("[The father's] mental status is irrelevant to a proper third party beneficiary analysis."). If Hampton Court were concerned that the father lacked the required mental capacity to execute binding contracts, it could have availed itself of the Legislature's comprehensive statutory scheme governing incapacitated individuals. See Florida Guardianship

- 10 -

Law, ch. 744, Fla. Stat. (2015). Any adult person—presumably including an individual affiliated with Hampton Court—could have petitioned for a court to adjudicate the father incapacitated and appoint a guardian. See §§ 744.3201, 744.334, Fla. Stat. An appointed guardian would have held the power to contract on the father's behalf for his residency at Hampton Court. See § 744.441(21), Fla. Stat. Hampton Court elected not to seek appointment of a guardian, and we decline to use common law contract principles to conduct an end-run around the Legislature's comprehensive guardianship scheme.

## V. Conclusion

We hold that the third-party beneficiary doctrine does not bind the father to the arbitration agreement in Hampton Court's nursing home admission agreement, to which he never agreed. Accordingly, we quash the Third District's decision below, and remand to that court for further proceedings not inconsistent with this opinion. We approve the decisions in Perry, Lepisto, McKibbin, and Fletcher, to the extent those decisions are consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY, J., dissents with an opinion.
POLSTON, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

- 11 -

CANADY, J., dissenting.

I am sympathetic to the view that the third-party beneficiary doctrine should not be employed to impose the arbitration provisions of the nursing home contract at issue in this case on the estate of Juan Mendez, Sr., who was not a party to the contract. The application of that doctrine is highly problematic in this case where there is no suggestion that Mendez exercised his will to obtain the benefit of any provision of the contract or otherwise manifested his assent to the contract. But the view adopted by the majority concerning the scope of the third-party beneficiary doctrine as the ground for quashing the district court's decision is not based on any argument presented by the Petitioner. Because I conclude that the Petitioner has made no argument that justifies quashing the decision on review, I dissent.

Our law recognizes the "sanctity" of the right "to freely contract[.]" State Farm Fire & Cas. Co. v. Marshall, 554 So. 2d 504, 505 (Fla. 1989). Accordingly, contracts to which competent parties have given their assent are declared invalid only if there is a compelling justification for doing so. See, e.g., Powertel, Inc. v. Bexley, 743 So. 2d 570, 574 (Fla. 1st DCA 1999) ("Florida courts may properly decline to enforce a contract on the ground that it is unconscionable. To support a determination of unconscionability, however, the court must find that the contract is both procedurally unconscionable and substantively unconscionable." (citation omitted)). The obverse of the right to freely contract is the right not to be bound

by a contract without assent. Contract law—including the law governing contracts to arbitrate—is about protecting and enforcing the expression of the will of the contracting parties. Just as courts should not invalidate the expressed will of contracting parties without compelling justification, courts should not impose contractual obligations on a nonparty without compelling justification.

The Petitioner here presents no argument explaining why the third-party beneficiary doctrine is by its own terms inapplicable in this case. Instead, the Petitioner relies on the effect of section 400.151, Florida Statutes (2009), which sets forth requirements for nursing home contracts. The Petitioner argues that where a nursing home contract has not been executed in accordance with the requirements of section 400.151 any remedy under the third-party beneficiary doctrine is foreclosed. According to the Petitioner, the common law third-party beneficiary doctrine is wholly displaced by the statute.

This argument would preclude a remedy in circumstances where the third-party beneficiary doctrine could quite appropriately be applied—e.g., where the nonparty intended beneficiary nursing home resident had affirmatively sought to enforce a provision of the contract. Accepting the logic of the argument regarding the displacement of the common law would also entail displacing remedies based on contract implied in the law or contract implied in fact in circumstances where affording such remedies would be appropriate under existing law. The Legislature

- 13 -

could, of course, displace the third-party beneficiary doctrine and the law regarding contracts implied in law and in fact, but nothing in the regulatory requirements of section 400.151 suggests that the failure to observe the formalities required by the statute should result in the wholesale displacement of common law remedies. The statute does not expressly displace existing common law remedies, and to displace those remedies by implication in this context is manifestly unreasonable.

The Petitioner's reliance on section 400.151 is unpersuasive. And no ground has been presented to justify quashing the decision on review.

POLSTON, J., dissenting.

Instead of applying well-settled contract law regarding third-party beneficiaries, the majority creates a manifest injustice "standard" by turning reasoning from old law review articles and a plurality opinion from an 1800s New York case on its head. The majority's decision will allow courts to arbitrarily disavow arbitration clauses as occurs here by Hampton Court being denied arbitration with Juan Mendez, Jr., the very person who signed the contract at issue.

I.

The Third District Court of Appeal explained the facts and procedural history of the case as follows:

> On March 13, 2009, the father was admitted to the facility. On the day the father was admitted, a doctor employed by the facility determined the father lacked the capacity to give informed consent or make medical decisions. The admission forms included an agreement

- 14 -

for care ("the agreement"). The agreement is the contract under which the facility provided the father with the various residential, nursing, and other services associated with residency at a nursing home facility. The agreement contained a broad arbitration clause, as follows:

> Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration in accordance with the provisions of the Florida Arbitration Code found at Chapter 682, Florida Statutes, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Although the son was not acting under a power of attorney at that time, he signed the agreement on a signature line indicating "signature of resident's representative." Below that signature block, the agreement included the following language:

> In the event that the resident has appointed a representative to control his/her assets, and even if such appointment has not been made through a legal document, the resident's representative shall be fully bound to the extent of those assets to the terms of this Agreement.

> The father resided at the facility for approximately four years, from early 2009 until his death in late 2013. His residency included years before and after the incident giving rise to this lawsuit. In July 2011, while residing at the facility, the father's eye became infected and had to be removed. The father subsequently gave the son power of attorney. In December 2012, the son brought suit against the facility on behalf of the father. The facility moved to compel arbitration on the basis of the arbitration clause in the agreement. The son asserted that the arbitration clause was not binding on the father, who was not a party to the agreement. The trial court compelled arbitration and this appeal [affirms].

Mendez v. Hampton Court Nursing Ctr., LLC, 140 So. 3d 671, 673 (Fla. 3d DCA 2014).

## II.

- 15 -

The majority obliterates longstanding Florida contract law applicable to third-party beneficiaries and denies Hampton Court's right to arbitrate, even though arbitration provisions are favored. Jackson v. Shakespeare Found., Inc., 108 So. 3d 587, 593 (Fla. 2013) ("Courts generally favor [arbitration] provisions, and will try to resolve an ambiguity in an arbitration provision in favor of arbitration.").

The law is well settled that the rights of third-party beneficiaries are limited by the terms of the contract. See 2 Williston on Contracts § 364A, at 873-74 & n.5 (3d ed. 1959) (collecting cases holding that a third-party beneficiary's right is limited by the terms of the contract). Our district courts in Florida have long held this includes contractual arbitration provisions. 8 Florida Construction Law Manual § 7:38 (2015-2016 ed.) ("Ordinarily, a third party beneficiary is bound by an arbitration clause in the contract under which the party claims third party beneficiary status."). "Florida courts have required third-party beneficiaries to arbitrate." Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1302 (11th Cir. 2014). " '[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.' " Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009) (quoting 21 Williston on Contracts § 57.19, at 183 (4th ed. 2001)) (emphasis added).

To hold that arbitration is not required, the majority arbitrarily applies a manifest justice "standard," relying on law review articles from 1902 and 1928, and dicta from an 1859 New York plurality opinion. Majority op. at 8; Lawrence v. Fox, 20 N.Y. 268, 275 (1859) (stating that manifest justice might result in a different outcome from the case before it). Essentially, the majority asserts that, because the third-party beneficiary doctrine was originally based upon principles of equity, the doctrine should yield when a court believes that enforcing an arbitration clause would be manifestly unjust. The majority attempts to persuade the reader of the propriety of turning the "manifestly just" language from the 1800s plurality on its head by quoting a 2007 edition of Corbin on Contracts and fairly recent law review articles regarding Professors Williston and Corbin. However, the majority ignores the fact that the two treatises that currently bear the names of Professors Williston and Corbin do not support the majority's position. See 21 Williston on Contracts § 57:19, at 183 (4th ed. 2001) ("[N]onsignatories may be bound by arbitration agreements entered into by others where they have no greater rights than those of the party through whom they claim, applying traditional principles of agency and contract law, including assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel."); 9-46 Corbin on Contracts § 46.9 (2015) ("Absent a contract term to the contrary, the beneficiary will be subject to an arbitration clause in the

- 17 -

contract for two reasons: (1) such holdings conform to the general principle that the terms of the contract define and limit the rights of the third party beneficiary; (2) there is a strong public policy in favor of arbitration."). The majority's position is simply out of step with binding legal doctrine.

Using its manifest injustice "standard," the majority reasons that Juan Mendez, Jr., should not be required to arbitrate his father's claims because his father did not sign the nursing home contract that included the arbitration clause. But Juan Mendez, Jr., signed the admissions contract on the line labeled "Resident's Representative." Now, the son seeks to disavow the terms of the contract that he signed as a representative of his father, while currently acting as a representative of his father's estate. It is not manifestly unjust to enforce the terms of a contract against the same person who signed it.[1]

Additionally, the majority attempts to distinguish the claim at issue in this case from a claim raised by a third-party beneficiary. The majority agrees that "when a plaintiff sues under a contract to which the plaintiff is not a party . . . we will ordinarily enforce an arbitration clause contained in that contract." Majority op. at 7. But the majority claims that here "the father does not bring suit as a third-

---

1. The majority once again misses the point in its discussion of agency law and medical incapacity. See majority op. at 10-12. Third-party beneficiary contract law, not agency law, controls this case.

party beneficiary for the benefit of a contract signed by others." Id. This is nonsensical. Perhaps the majority's claim is related to its assertion that "the father's estate sued for negligence and statutory violations—not to enforce the son's contract with Hampton Court." Id. at 6. However, Hampton Court's duty to provide care to the father only arose based upon the contract signed by the son for the benefit of the father. Therefore, perhaps the majority is intending to hold that the enforcement of the contract would be manifestly unjust because the claim is outside the scope of the arbitration clause? This apparent mixture of different legal theories is incomprehensible and certainly not the law.

Further, the majority incorrectly states that the district courts disagree on whether a nursing home resident is bound by an arbitration clause in a nursing home contract when the resident did not sign or otherwise agree to the contract. Majority op. at 3. To the contrary, the district courts have all applied well-settled third-party beneficiary law and held that those residents are bound by the arbitration clauses.

The majority acknowledges that the First and Third Districts have held that those residents are bound as a third-party beneficiary. Majority op. at 3. Indeed, the Third District has explained that "[a]rbitration clauses in contracts are binding on third party beneficiaries." Orion Ins. Co. v. Magnetic Imaging Sys. I, 696 So. 2d 475, 478 (Fla. 3d DCA 1997) (citing Terminix Int'l Co., LP v. Ponzio, 693 So.

- 19 -

2d 104, 109 (Fla. 5th DCA 1997) ("As third party beneficiaries, these additional plaintiffs are bound by the arbitration provision."); see also Zac Smith & Co., Inc. v. Moonspinner Condo. Ass'n, Inc., 472 So. 2d 1324, 1324 (Fla. 1st DCA 1985) (holding that "an arbitration clause in a contract is binding on a third-party beneficiary"). This is true even if the third-party beneficiary did not sign the contract containing the arbitration agreement: "[A] nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract, or if the nonsignatory is specifically the intended third-party beneficiary of the contract." Germann v. Age Inst. of Fla., Inc., 912 So. 2d 590, 592 (Fla. 2d DCA 2005).

But the majority incorrectly states that the Second, Fourth, and Fifth Districts hold otherwise. Majority op. at 3-4 (stating that "[t]he First and Third Districts held that the resident is bound by the contract, because the resident is the intended third-party beneficiary of the contract" but that "[t]he Second, Fourth, and Fifth Districts held differently").

The Second, Fourth, and Fifth Districts all acknowledge that third-party beneficiaries can be bound by arbitration provisions. See Terminix, 693 So. 2d at 109 (citing Raffa Assocs. v. Boca Raton Resort & Club, 616 So. 2d 1096 (Fla. 4th DCA 1993); Zac Smith, 472 So. 2d 1324). For example, the Fifth District has explained that "Florida courts have generally held that arbitration clauses in

- 20 -

contracts may be enforced by and are binding on third party beneficiaries."

Hirshenson v. Spaccio, 800 So. 2d 670, 673 (Fla. 5th DCA 2001) (citing cases);

see also Lion Gables Realty Ltd. v. Randall Mech., Inc., 65 So. 3d 1098, 1099 (Fla.

5th DCA 2011). The Fourth District also recognizes that "ordinarily a third-party

beneficiary of a contract is bound by an arbitration clause in that contract." Raffa

Assocs., 616 So. 2d at 1097; see also Martha A. Gottfried, Inc. v. Paulette Koch

Real Estate, Inc., 778 So. 2d 1089, 1090 (Fla. 4th DCA 2001) ("[A] third party

beneficiary to a contract can be compelled to arbitrate."). Further, the Second

District recently held, in Pulte Home Corp. v. Bay at Cypress Creek Homeowners'

Ass'n, Inc., 118 So. 3d 957, 958 (Fla. 2d DCA 2013), that third-party beneficiaries

can be compelled to arbitrate. In a parenthetical, the Second District explained

that, "[a]s a basic derivative of the principle that a third-party beneficiary steps into

the shoes of a contracting party and is subject to all provisions of [the] contract, a

third-party beneficiary of a contract containing an arbitration provision can be

compelled to arbitrate." Id. (quoting J. Douglas Uloth & J. Hamilton Rial, III,

Equitable Estoppel as a Basis for Compelling Nonsignatories to Arbitrate—A

Bridge Too Far?, 21 Rev. Litig. 593, 602 (Summer 2002)).

The majority cites the Fifth District's decision in Perry ex rel. Perry v.

Sovereign Healthcare of Metro West, LLC, 100 So. 3d 146 (Fla. 5th DCA 2012),

as the basis for its claim that the Fifth District has disavowed general third-party

- 21 -

beneficiary doctrine in regard to nursing home contracts, but the holding in <u>Perry</u>, 100 So. 3d at 147-48, was based upon the fact that the person who signed the contract in that case only signed as a guarantor for payment on behalf of the resident, not as the resident's representative or the resident's power of attorney. This difference is legally significant. <u>See</u> <u>Fed. Deposit Ins. Corp. v. Univ. Anclote, Inc.</u>, 764 F.2d 804, 806 (11th Cir. 1985) ("A guaranty is a collateral promise to answer for the debt or obligation of another." (citing <u>Nicolaysen v. Flato</u>, 204 So. 2d 547, 549 (Fla. 4th DCA 1967))).

<u>Lepisto v. Senior Lifestyle Newport Limited Partnership</u>, 78 So. 3d 89, 92 (Fla. 4th DCA 2012), and <u>Fletcher v. Huntington Place Limited Partnership</u>, 952 So. 2d 1225, 1227 (Fla. 5th DCA 2007), cited by the majority, are likewise distinguished on the basis that the contract indicated that the signor was a financial guarantor, not a representative for the resident. Finally, the majority cites <u>In re Estate of McKibbin v. Alterra Health Care Corp.</u>, 977 So. 2d 612 (Fla. 2d DCA 2008), but that decision does not mention third-party beneficiaries at all. The Second District does explain that "there was no evidence that [the resident] was mentally or physically incapacitated to make decisions for herself," which is factually different from the case before us. <u>Id.</u> at 613.

III.

In conclusion, I would follow well-settled contract law regarding third-party beneficiaries and not create a manifest injustice standard that allows the court to disavow arbitration proceedings on an ad hoc basis. I would not deny Hampton Court the right to arbitrate with Juan Mendez, Jr., the same person who signed the contract as the representative for his father.

I dissent.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

Third District - Case No. 3D13-1855

(Miami-Dade County)

Charles M. P. George of The Law Offices of Charles M-P George, Coral Gables, Florida; Christopher Wayne Wadsworth and Raymond Renato Dieppa of Wadsworth Huott, LLP, Miami, Florida,

for Petitioner

Thomas Anthony Valdez of Quintairos, Prieto, Wood & Boyer, P.A., Tampa, Florida,

for Respondent